# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**PATRICK L. BAUCUM,**

        **Petitioner,**

**v.**                                         **CIVIL ACTION NO. 2:12cv4**
                                                              **(Judge Bailey)**

**KUMA J. DEBOO, Warden,**

        **Respondent.**

## REPORT AND RECOMMENDATION

## I. BACKGROUND

On January 18, 2012, the *pro se* Petitioner, Patrick L. Baucum, an inmate at the Rivers Correctional Institution[1], filed an application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 seeking to have credit against his federal sentence for time spent while under custody by local authorities in Washington D.C.. Petitioner is also seeking a *nunc pro tunc* designation for his federal sentence. On January 19, 2012, the petitioner paid the required $5.00 filing fee. Accordingly, an Order to Show Cause was issued against the Respondent. On March 5, 2012, the Respondent filed his response. In addition to his Response, the Respondent also filed a number of exhibits and attachments, including the Declaration of Andrew Roush and Sentence Monitoring Computation Data. On March 27, 2012, the Petitioner filed a Response in Opposition to Respondent's Motion to Dismiss or Summary Judgment.

## II. FACTS

On December 21, 1992, in case F13028-92(c-f), Petitioner was charged in the D.C. Superior Court for Assault with Intent to Kill While Armed, Possession of a Firearm during Crime of Violence,

---

[1] At the time this petition was filed, the petition was incarcerated at FCI Gilmer which is located in Glenville, West Virginia. Accordingly, this Court has proper jurisdiction and venue over this matter.

Carrying Pistol without a License, and Second Degree Murder while Armed.[2] (Doc. 10-1, p. 2.) On March 1, 1994, Petitioner was sentenced by the United States District Court for the District of Columbia to a term of 151 months (later reduced to 121 months) for Unlawful Distribution of Cocaine Base within 1000 Feet of a School. (Id.) After sentencing, Petitioner was returned to local authorities in Washington D.C.. (Id.) On March 16, 1996, Petitioner was sentenced by D.C. Superior Court to a term of 20 years to life. (Id.)

Petitioner was awarded 1,166 days of prior custody credit towards his D.C. Superior Court sentence from December 21, 1992, the day he was charged with the offense in F13028-92(c-f), through February 29, 1996, the day prior to the commencement of his sentence in that matter. (Id.) On October 2009, Petitioner was released on parole from his D.C. Superior Court sentence and began serving his consecutive sentence of 121 months imposed by the United States District Court for the District of Columbia. (Id.) Petitioner was awarded 36 days of prior custody credit towards his federal sentence for days held on April 8, 1992, July 12, 1992, October 14, 1992 and November 18, 1992, through December 20, 1992, because those days had not been credited against any other sentence. (Id.) With consideration for prior custody credit and good conduct time, Petitioner's projected release date is June 28, 2018. (Doc. 10-10, p. 2.)

### III. **CONTENTIONS OF THE PARTIES**

Petitioner makes the following argument in his Application for Habeas Corpus:

(1) Petitioner's federal sentence should be credited with the time he spent in the custody from December 21, 1992 until March 1, 1994.

---

[2]The petitioner was initially arrested by local authorities in Washington, D.C., on April 8, 1992, for carrying a pistol without a license. He was released that same day. On July 12, 1992, the petitioner was arrested by D.C. local authorities for receiving stolen property. He was again released the same day. On October 14, 1992. The petitioner was arrested by D.C. local authorities for carrying a pistol without a license and released the same day. Finally, on November 8, 1992, the petitioner was arrested by local authorities in D.C. for carrying a pistol without a license. He remained in custody following this fourth arrest. (Doc. 10-1, pp. 1-2).

(2) The BOP has rejected Petitioner's *nunc pro tunc* request and Petitioner has exhausted all necessary remedies.

The Government contends that the petition should be dismissed because:

(1) Petitioner is not entitled to any additional prior custody credit because to do so would give him double credit for his detention time.

(2) The BOP has yet to make any determination on Petitioner's *nunc pro tunc* designation. Regardless, Petitioner has failed to exhaust his administrative remedies before seeking relief from this Court.

## IV. STANDARD OF REVIEW

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual

allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence"

favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## V. ANALYSIS

### A. Prior Custody Credit

The Attorney General, through the Federal Bureau of Prisons, is responsible for computing federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). When computing the sentence, the BOP must consider "(1) when the federal sentence commenced; and, (2) the extent to which the petitioner may be entitled to credit for time spent in custody prior to commencement of the sentence." Bahena-Carreno v. Sherman, 2007 WL 1141511, *3-4 (W.D. Pa. 2007).

The first inquiry, concerning the commencement of the sentence, is governed by 18 U.S.C. § 3585(a), which states:

> A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

"Thus, under the express terms of the statute, a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." Bahena-Carreno, 2007 WL 1141511, at *4.

To determine the extent to which the petitioner may be entitled to credit for time served, the BOP

must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences
>
> (1) as a result of the offense for which the sentence was imposed or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

The United States Supreme Court has held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, 503 U.S. at 337. Therefore, under 18 U.S.C. § 3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence. See United States v. Goulden, 54 F.3d 774 (4th Cir. 1995) (credit is only available for time spent in custody which has not been credited against another sentence); United States v. Brown, 977 F.2d 574 (4th Cir. 1992) (Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence).

Here, Petitioner served a 20 years to life sentence imposed by the D.C. Superior Court for Assault with Intent to Kill While Armed, Possession of a Firearm during Crime of Violence, Carrying Pistol without a License, and Second Degree Murder while Armed. (Doc. 10-1, p. 2.) Petitioner was paroled from his D.C. sentence on October 21, 2009. (Id.) Petitioner's time served between December 21, 1992 to February 29, 1996 was credited towards his D.C. sentence. (Id.)

Although Petitioner was sentenced on March 1, 1994 in federal court for Unlawful Distribution of Cocaine Base within 1000 Feet of a School, his federal sentence of 121 months did not commence until October 21, 2009, after the completion of his D.C. sentence. (Id.) Petitioner was awarded jail credit towards his federal sentence for days served on April 8, 1992, July 12, 1992, October 14, 1992, and November 18, 1992 through December 20, 1992. (Id.) However, as discussed above, because the petitioner cannot receive double credit, he is not entitled to any credit against his federal sentence for the

time served between December 21, 1992 to February 29, 1996.

**B.** *Nunc Pro Tunc* **Request**

In general, a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). However, 18 U.S.C. § 3621(b) gives the Bureau of Prisons the authority to "designate the place of [a] prisoner's imprisonment" by making a *nunc pro tunc* designation, whereby the Bureau of Prisons designates a state facility as the place for service of a federal sentence. See United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998) (a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence.")

The BOP's Designation and Sentence Computation Center construed ths instant petition as a request by the petitioner for a *nunc pro tunc* designation. Accordingly, on February 17, 2012, a letter was sent to the Honorable Royce C. Lamberth, who presided over the petitioner's District Court criminal case, to afford him an opportunity to state his position with respect to a retroactive designation. (Doc. 10, p. 2.) Per policy, the BOP gives the sentencing court 60 days to respond to this request. Id. After the 60 days has passed, the BOP will make a determination regarding the petitioner's request. Id. Respondent maintains that a final determination on the petitioner's request for *nunc pro tunc* designation has not been made. Moreover, Respondent argues that if the BOP's determination is adverse to Petitioner, he must exhaust his administrative remedies before requesting relief from this Court on that issue.

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal

inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487, at *8 (S.D. W. Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See id. at *5-*7. However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. See Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998).

The undersigned recognizes that Petitioner maintains that the BOP long ago denied his request for *nunc pro tunc* designation. Moreover, it does appear that Petitioner requested a *nunc pro tunc* designation in 2005, and specifically requested credit towards his federal sentence from the date it was imposed on March 3, 1994. However, it does not appear that the BOP sought input from the sentencing judge at that time. Furthermore, the documents submitted by the petitioner do not demonstrate that he exhausted his administrative remedies.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at

all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F. Supp. 941, 943 (D. Md. 1997).

The information provided by Petitioner fails to establish Petitioner appealed the Regional Director's decision to the Office of General Counsel. (Doc. 20-1). Accordingly, he did not completely exhaust his administrative remedies. However, even if he had exhausted his administrative remedies in 2005, it would appear that the BOP is again evaluating his request for a *nunc pro tune* determination, and the Court should defer to the expertise of the BOP before entertaining any further consideration of Petitioner's request. The undersigned notes that Petitioner's prior *nunc pro tunc* request was made while serving his D.C. Superior Court sentence. (Id.) Petitioner is currently serving a federal sentence that is consecutive to his D.C. sentence, and apparently, for the first time the BOP has sought the input of the sentencing judge in his federal case. (Doc. 10-10, p. 2.) If Petitioner's current *nunc pro tunc* request is denied, Petitioner will have an opportunity to exhaust his administrative remedies through all four steps before requesting relief from this Court. During this process, if Petitioner is denied relief, he may determine that it would be fruitless to seek relief from this Court.

## V. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss; Motion for Summary Judgment (Doc. 9) be **GRANTED,** Petitioner's § 2241 petition be **DENIED and DISMISSED WITH PREJUDICE** insofar as it requests additional prior custody credit**,** and be **DENIED and DISMISSED WITHOUT PREJUDICE** insofar as it requests a *nunc pro tunc* designation.

Any party may file, within fourteen (14) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge.

Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

**DATED**: May 25, 2012

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE